This case will be People v. Chittum, Brandon Hill, Case No. 516-0411. May it please the Court, Counsel, Chelsea Kasten on behalf of the State. Your Honors, just as an initial matter, the State just wanted to acknowledge that there has been a motion taken with this case filed by defense. However, unless this Court has questions about that motion, the State will just stand on its response. Thank you. This Court reviews de novo the ultimate legal question before it, whether the defendant initiated a voluntary waiver of his right to counsel. The trial court in this case failed to look to the totality of the circumstances and only focused on the conversation between Lt. Goloky and the defendant. There was no explicit finding of a credibility determination, and absent that finding, we look at the totality of the circumstances. The State believes that the case of People v. Morgan is instructional to this case. In People v. Morgan, the defendant alleged his confession was not given voluntarily because he was unduly influenced and coerced. There was conflicting testimony concerning physical mistreatment, undue influence, and improper threats in that case against the defendant between the time of the initial questioning, when it was stopped, and when the subsequent questioning was commenced. The Illinois Supreme Court held that the initial request for counsel is not irreversible, absent a showing that the expressed desire to make a statement without the presence of counsel was made under the force of continued impermissible interrogation. In addition, Your Honors, in People v. Richardson, the Illinois Supreme Court looked at a videotaped statement and noted the defendant's cool, calm, and collected appearance following an alleged improper and coerced tactic. It's a fine line of distinction that has been drawn between information conveyance and coercive tactics. We do not punish the police for communicating information to a defendant, who then takes that information and draws his own conclusions and decides to waive his right to counsel and communicate with the police. We punish police for being coercive and interrogating the defendant after they've invoked the right to counsel, and defendant concedes in his brief on page 7 that this was not an interrogation or express questioning. This was a discussion that led to the defendant asking questions of Lt. Goloky before the defendant was taken over to the jail, where he ultimately decided he wanted to speak with police again. Counsel, you talked about the discussion. I understand it was conveyed to the defendant that his wife might lose the car, the child might go to DCFS. That wasn't in response to any question from the defendant, was it? Your Honor, I believe that the defendant did ask a question about his wife, at which point Lt. Goloky said, yes, we're going to have to take the car and we're going to have to ask her a question because there's two defendants in this case, Your Honor. And his whole thing was, hey, Patrick Chase, the co-defendant, is communicating with us. And the two co-defendants had decided to use his wife's car to take the dismembered body parts and dump it. So, yeah, they were going to have to take the car. Acknowledging that would have just been in reference to the fact that, hey, we know this information now because your buddy is talking to us. If the court looks at the video recording of the second interview that occurred on December 19th, and the court notes the defendant's body language, it doesn't show hostility or reluctance to speak with the police, not the court. In fact, Your Honor, he actually expresses the relief that he felt coming off of his shoulders, being able to finally talk about what had occurred. The date of the murder and the date of this questioning were several weeks apart. And so he expressed all the relief that he felt in finally being able to talk about it. In addition, Your Honors, his primary concern during the questioning was being able to speak with his co-defendant because he was concerned about being viewed as a snitch. There wasn't expressed concern about his wife or his child. He wanted to talk to his friend. Your Honors, invoking a Fifth Amendment right does not equate to a police officer not being able to speak to the defendant at all. It invokes a right against interrogation. The Fifth Amendment isn't designed to protect a defendant from his own thought process and decisions. It's designed to protect from coercive tactics designed to elicit incriminating situations. That does not give a defendant who has requested counsel an indefinite duration of time where no officer can speak to them on any subject once they've invoked their right to counsel. Lt. Golicki stated that he had not threatened the defendant's family, but that he did tell the defendant that they have to talk to his wife from what Patrick Chase, his co-defendant, had told the officers. Because while they didn't think that she was directly involved, they did in fact know that her vehicle had been used to transport the body. Counsel, the trial court, in rendering its decision to suppress, referenced looking at the totality of the circumstances. Yes, Your Honor. And so, you know, it wasn't any one factor, I suppose, in the trial court basis it's ruling on. How would you address, and I know you are, but please address that point, the totality of the circumstances and why. Looking at that, the confession was not coerced. Yes, Your Honor. While that is what the trial court stated, the state feels that the trial court focused too much of its attention on this conversation and not enough on the whole set of circumstances, not just that conversation, but also the interview which followed and the time period in between the two. It's a fact that no single factor is dispositive in reviewing the motion to suppress, and the state feels that that particular factor was focused on too wholly in the overall picture. However, if this court does find that the trial court may have expressed credibility determination, then great deference is given to the trial court and the state would lose its appeal. However, we do feel that this is, in fact, an ultimate legal question before it, and therefore it deserves to no vote review. Finally, Your Honors, this court, the state would ask this court to please reverse the granting of the motion to suppress by the lower court unless this court has any further questions. Thank you. Thank you. May it please the court, counsel. I am Evelyn Lewis, the attorney for Mr. Chittum. We believe the trial court was correct in suppressing the statement made by Mr. Chittum. I think the issue before the court was and is where Mr. Chittum's rights violated when the police initiated the communications with him. When Mr. Chittum was brought to the station, there was questioning for about 26 minutes, and at that point Mr. Chittum invoked his right to counsel. At that point, the questioning ended. However, Lieutenant Gallagher had been watching this the entire time from the other room. So he saw when Mr. Chittum invoked his right to counsel, the cameras were turned off at that point. Lieutenant Gallagher goes back into the interrogation room where Mr. Chittum is. He went back in there. About 10 minutes later, did not turn the cameras back on. And I do believe the state of Illinois has made it clear when it comes to interrogations with respect to murder, cameras should be on. At any rate, this case is distinguishable from Morgan. Mr. Chittum did not initiate that contact, that communication. He did not ask the officer to come back in. And the trial court made clear foundings. He found that Lieutenant Gallagher initiated this kind of communication. Not only that, when he went back in to talk to him, Lieutenant Gallagher specifically testifies that he asked him or told him he needed to consider his status of not talking. He didn't just go in to make small talk. He actually testified, and I believe the trial court mentioned it in their order, that he did in fact say, maybe your status of not talking is maybe you need to consider that. It is improper once a defendant invokes his right to counsel for a police officer to come in and say, consider your status of not talking. Additionally, he told him he needs to be able to sink or swim with his co-defendant. That's another thing that is improper. And the court relied on the decision of Edwards v. Arizona, which creates a bright line rule that once the right to counsel is invoked, at that point, if the police initiate communications, then that conversation, those statements that are made subsequent to that should be inadmissible in the state's case in chief. And I think that's what we have here. And the judge looked at the totality of the circumstances, but it appears from the state's brief that they feel that this communication is not something that's even relevant here. During this communication, the issue came up regarding Mr. Chittum's wife and kids. Mr. Chittum testified that the officer told him it would behoove him to cooperate, and the trial court put that factual finding in its order. The trial court did not have to ignore Mr. Chittum's testimony, and the trial court did not. Additionally, while the officer acknowledged that he told Mr. Chittum his wife would be put in a difficult spot, he even acknowledged during his testimony and suppression hearing that he did tell Mr. Chittum that you don't want your wife quote, you don't want your kid disrodged. So for him to acknowledge that during the suppression hearing, that's an indication clearly those topics were discussed during this 10 to 15 minute interchange. Also, the trial court pointed out in its order that this wasn't just a situation where the officer walked in the room and Mr. Chittum started asking questions. The officer acknowledged he talked to him before Mr. Chittum asked any questions. Again, to just blatantly acknowledge I'm talking to him and I'm telling him you need to consider your status of not talking, that is clearly distinguishable from Morgan, that the state relied on were in Morgan. Even though police officers entered the room, they did not initiate a conversation with that defendant, and they certainly didn't tell that defendant you need to consider your status of not talking. When you look at the totality of the circumstances, even if you get to that argument, because I think if the court concludes under the average rule that the police initiated this communication, then we don't even get to the next test of whether the statement was voluntarily made. But even if you were to get to that test of voluntariliness, when you have a situation where you have the defendant testifying that the officer stated it would behoove you to cooperate, and the judge has made that a factual finding, and you also have a situation where the officer has admitted that he in fact told the defendant, Mr. Chittum, that you don't want your wife screwed with, you want to do this as pain-free as possible, you don't want your kid dislodged, all that's in the record. When you look at all that, clearly there was compulsion there for him to talk. Mr. Chittum even testified that after the officer left the room, he said I'm going to give you 30 minutes to reconsider whether you're going to talk to us. And it wasn't until that point that he then said, okay, call them in, I'll talk to them. The state does not address why this conversation or communications that occurred are not controlling here. How do you get beyond that and ignore that to say whatever was said during that 10 minutes, 15 minutes, did not result in Mr. Chittum deciding to waive his right to counsel? And I think the trial court who heard all the testimony did consider the totality of the circumstances and did rely again on the Edwards rule that you cannot have an officer come in and say to a defendant who has asked for an attorney that you need to consider your status of not talking to us. And I remember reading that, did he actually use the language with the who view to cooperate? Was that a paraphrase? Yes. Mr. Chittum testified that the officer told him it would behoove you to cooperate. And the trial court did make that one of its findings. But the trial court also pointed out that the officer admits that he told him, you are going to, quote, sink or swim with what Patrick Chase is saying. Sink or swim? Additionally, he told him maybe your status, quote, of not talking is, you may be, you need to consider that. And he did also acknowledge that he probably did tell Mr. Chittum he is putting his wife in a difficult spot. So when you couple all of those circumstances together, I think the trial court clearly had a basis to say the statements made after this interaction were not voluntarily made. And again, the trial court seems to put a lot of emphasis on who initiated this conversation. And I do believe that that is a bright line test that is articulated in Elders versus Arizona and People versus Winsett. The state has not denied that Lieutenant Gallagher initiated this conversation after Mr. Chittum invoked his right to counsel. I think if the court follows that bright line test, it should affirm and uphold the trial court's decision. Your Honor, there was a motion I filed regarding striking some exhibits. I don't know about that. We'll take it with you. Okay. All right. Thank you. Your Honors, we don't have to like the fact that the officer had a conversation with the defendant in this case. And we're not saying that there wasn't a conversation. I don't believe that the state has ever said that there was not a conversation. But that's not what is at issue here. The question is if the officer crossed the boundary between information conveyance and coercive tactics. In reference to his testimony of the motion to suppress regarding the status of not talking, the officer was referring to his potential subjective intent. However, he didn't say that he had used that exact language when he was speaking with the defendant. And again, Your Honor, regardless of what subjective intent he might have had, that's not the question. The question is did he cross a boundary? The state is not holding that this conversation is irrelevant. The state is arguing that this conversation was part of the whole picture and the whole picture was not properly considered by the trial court, that the trial court focused its attention too intently on this one part of the entire picture and didn't consider in the second interview what is the defendant's body language, what are all these factors under the totality of the circumstances that would tell us if he's been unduly coerced or not into giving a confession at this time. Unless the court has any questions for us, the state would just ask that you reverse the lower court's ruling. Thank you. Thank you. Counsel, for your arguments, the court will take this under advisement and render a decision in due course.